Hon. William G. McMahon Chairman Commission of Correction
Your counsel has requested our opinion with regard to the jurisdiction of the Commission of Correction's Medical Review Board. His letter states that the Medical Review Board believes it has the right to investigate the death of individuals in situations where police officers have been involved, even prior to an actual arrest. The Commission's position is that the Board's jurisdiction does not commence until the individual has been lawfully confined to a correctional facility.
The Commission of Correction (Commission) was created by Article XVII, section 5 of New York's Constitution, which states, in relevant part, as follows:
 "There shall be a state commission of correction, which shall visit and inspect, or cause to be visited and inspected by members of its staff, all institutions used for the detention of sane adults charged with or convicted of crime."
Article 3 of the Correction Law sets forth the specific powers and duties of the Commission (Correction Law, §§ 40, et seq.). Section 45(6) gives the Commission the power to promulgate rules and regulations "establishing minimum standards for the care, custody, correction, treatment, supervision, discipline and other correctional programs for all persons confined in correctional facilities". Other powers and duties are set forth in other subdivisions of sections 45 and 46. All of these powers and duties deal with the different aspects of inspection, regulation and monitoring of correctional facilities.*
The constitutional and statutory language indicate that the purpose of the Commission is to act as an independent body to regulate correctional facilities, and that its powers are limited to matters directly concerning correctional facilities. This purpose is reflected in former Governor Hugh Carey's legislative memorandum approving legislation which recodified the statutes and expanded the Commission's power:
 "The State of New York, with over 400 State and local correctional facilities, has one of the largest correctional systems in the country. It is of utmost importance that there be some independent and effective oversight of the operations of this system to assure the public that its performance meets or exceeds acceptable standards, that its practices are consistent with the goals of our criminal justice system and that the rights and responsibilities of inmates and correctional personnel are recognized and respected" (L 1975, ch 865, Legislative Bill Jacket).
There is no mention in any of the statutory or constitutional language, or the legislative memoranda, of any powers of the Commission with regard to matters outside of those directly relating to correctional facilities. The Commission's regulations begin with the admittance of an inmate to a correctional facility, and do not contemplate any action prior to confinement (9 NYCRR §§ 7000, et seq.). Accordingly, it would appear that the Commission has no constitutional, statutory or regulatory authority to investigate incidents which predate incarceration.
The Medical Review Board is organized under section 43 of the Correction Law. It is described therein as being "within the commission". As a subsidiary of the Commission, the extent of the Board's jurisdiction can be no greater than that of the Commission itself (Lombard v Wasser, 104 Misc.2d 883 [Sup Ct, Monroe Co, 1980]). InLombard, the court found that issuance of directives and formulation of policy were outside the Board's jurisdiction, stating:
 "The Correction Medical Review Board is subsidiary to the State Commission of Correction. The Board possesses no jurisdiction or power other than that granted under section 47 of the Correction Law. It is manifest from the statute that the Legislature intended the Board to function solely in an advisory capacity. It has power to investigate. It has a duty to report. It has discretion to make recommendations. Those are the limits of its jurisdiction" (104 Misc.2d at 887).
The Board's duties are set forth in section 47 of the Correction Law:
 "1. The board shall have the following functions, powers and duties:
 (a) Investigate and review the cause and circumstances surrounding the death of any inmate of a correctional facility.
 (b) Visit and inspect any correctional facility wherein an inmate has died.
 (c) Cause the body of the deceased to undergo such examinations, including an autopsy, as in the opinion of the board, are necessary to determine the cause of death, irrespective of whether any such examination or autopsy shall have previously been performed.
 (d) Upon review of the cause of death and circumstances surrounding the death of any inmate, the board shall submit its report thereon to the commission and, where appropriate, make recommendations to prevent the recurrence of such deaths to the commission and the administrator of the appropriate correctional facility.
 (e) Investigate and report to the commission on the condition of systems for the delivery of medical care to inmates of correctional facilities and where appropriate recommend such changes as it shall deem necessary and proper to improve the quality and availability of such medical care.
 2. Every administrator of a correctional facility shall immediately report to the board the death of an inmate of any such facility in such manner and form as the board shall prescribe, together with an autopsy report, if any."
By the very language of this enabling statute, the powers of the Medical Review Board are limited to correctional facilities. Persons who are in police custody, but not yet incarcerated, could not be said to be "inmates of correctional facilit[ies]."
 "We understand [the Board's] purpose to be assurance of a full investigation of all deaths in state prisons — whether of staff or inmates — with full reports to the appropriate state officials in cases of negligence or homicide" (L 1975, ch 865, Legislative Bill Jacket, "Statement for the Senate Standing Committee on Crime and Correction").
Accordingly, in our opinion, a person does not come under the jurisdiction of the Commission of Correction's Medical Review Board until such time as that person has been confined in a "correctional facility", as that term is defined in the Correction Law. Injury or death of persons while in police custody or under arrest, but not yet confined in a correctional facility, are subject to investigation by the coroner and district attorney, not by the Board (County Law, § 671).
* The Correction Law defines a correctional facility in the following way:
 "any institution operated by the state department of correctional services, any local correctional facility, or any place used, pursuant to a contract with the state or a municipality, for the detention of persons charged with or convicted of a crime" (Correction Law, § 40[3]).
Local correctional facilities include the following:
 "any county jail, county penitentiary, county lockup, city jail, police station jail, town or village jail or lockup, court detention pen or hospital prison ward" (id., § 40[2]).